**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **MICHELLE GREENLEE,** ) | **CASE NO. 1:03CV2410** |
| ) | |
| Plaintiff, ) | **JUDGE CHRISTOPHER A. BOYKO** |
| ) | |
| Vs. ) | |
| ) | |
| **CITY OF CLEVELAND, et al.,** ) | **OPINION AND ORDER** |
| ) | |
| Defendants. ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter comes before the Court on two Motions for Summary Judgment, the first by Defendants City of Cleveland, Chief of Police Edward Lohn, Cleveland Police Department, City of Cleveland Police First District, Manuel Strefas, John Kraynik and Frank Woyma; the second by Defendants West Sixth Street Partners, Inc. and the Velvet Dog. In addition, the Court considers Defendants' City of Cleveland, Lohn, Cleveland Police Department, City of Cleveland Police First District, Strefas, Kraynik, and Woyma's Motions to Strike the respective affidavits of Betsy Dechant and Harriett Lemberger-Schor.

Upon careful consideration and review, the Court grants Defendants' Motion for Summary

Judgment to Defendants City of Cleveland, Edward Lohn, Cleveland Police Department, City of Cleveland Police First District, Manuel Strefas, John Kraynik, and Frank Woyma, as there are no genuine issues of fact and Defendants are entitled to judgment as a matter of law. The Court denies Defendants' West Sixth Street Partners, Inc. and the Velvet Dog Motions for Summary Judgment, as there exist genuine issues of fact and Defendants are not entitled to judgment as a matter of law. The Court further dismisses Officer Martin Tate from the action. The Court Orders Plaintiff to show within 30 days of the filing of this Order, in writing and supported with affidavit, good cause why Jane Does 1-2 should not be dismissed. Failure to do so will result in the dismissal of all Doe defendants. Lastly, the Court grants Defendants' City of Cleveland, Edward Lohn, Cleveland Police Department, City of Cleveland, Strefas, Kraynik, and Woyma's Motions to Strike the respective affidavits of Betsy Dechant and Harriett Lemberger-Schor.

## I. FACTUAL BACKGROUND

Plaintiff claims she suffered injuries from the misconduct of various Cleveland Police Department officers as well as the negligence of the West Sixth Street Partners and the Velvet Dog on the night of December 1, 2001. Plaintiff filed her complaint on November 11, 2003, in the U.S. District Court for the Northern District of Ohio, naming as parties: West Sixth Street Partners, Inc.; Velvet Dog; City of Cleveland; Cleveland Police Department; Chief of Police Edward F. Lohn; City of Cleveland Police - First District; City of Cleveland Police Officer Manuel Strefas; Officer John A. Kraynik; Officer Frank J. Woyma, Jr.; and Officers Jane Doe 1-2.

Plaintiff presents six counts, naming the parties in each count. Count One alleges cruel and unusual punishment in violation of the Eighth Amendment against Defendants City of Cleveland Police -

2

First District and Officer Jane Does 1-2. Count Two asserts Defendants Strefas, Officer Martin A. Tate, Kraynik, and Jane Does 1-2 used excessive force against Plaintiff, violating her civil rights under 42 U.S.C. § 1983 and her Fourth Amendment protection against unreasonable searches and seizures. Count Three alleges intentional excessive force by Defendant Strefas. Count Four alleges intentional infliction of emotional distress (IIED) by Defendants City of Cleveland Police - First District, Jane Does 1-2, Strefas, Kraynik, and Woyma. Count Five charges that Defendants Strefas, Kraynik, Woyma, and Jane Does 1-2 used excessive force during incarceration; Count Five also alleges the Cleveland Police Department and/or City Of Cleveland Police - First District had a policy or custom depriving Plaintiff of her constitutional rights contra the Fourth Amendment, due to the policy, custom, or failure to properly train its officers. Count Six asserts that Defendants West Sixth Street Partners and Velvet Dog negligently permitted defendants Strefas and Woyma to physically assault a patron of their establishment without provocation and maliciously, breaching a duty of care on the part of West Sixth Street Partners and the Velvet Dog to ensure that the patron remain free from physical and mental harm.

Plaintiff's Complaint alleges that Michelle Greenlee and her fiancé came to the Cleveland for their annual holiday shopping. They planned to spend the night, and checked into a hotel. While at the hotel, Plaintiff had four amaretto sours in three hours. She had nothing more until at least 9:00pm, when she and her fiancé arrived at the Velvet Dog nightclub. She had at least one drink while at the Velvet Dog.

Defendants Manuel Strefas and Frank Woyma were off-duty police officers employed as private security at the Velvet Dog. On December 1, 2001, Strefas and Woyma were not working off-

3

duty security at the nightclub, but were patrons. Within two hours of Plaintiff's arrival at the Velvet Dog, Strefas was asked by a bartender to help down a female patron, Plaintiff, who was dancing on an elevated platform, outside of the guardrails. The owner of the bar, Mr. Hanna, indicated that he was concerned about Plaintiff's "level of drinking," but did not speak to Strefas before the incident and did not notice the Plaintiff before the incident. There is a factual dispute between Defendants and Plaintiff as to whether Plaintiff was intoxicated.

Strefas clipped his Cleveland Police Division badge to the collar of his shirt and approached Plaintiff, who was unable to hear what Strefas was saying, and Plaintiff thought he was hitting on her. According to Plaintiff, Strefas grabbed her crotch, and she then tried to kick who she thought was a "creep" but missed him. According to Strefas, he identified himself as a police officer, asked that she get down from the platform, and Plaintiff tried to kick Strefas in the head. Her male friend apologized and pulled the Plaintiff from the platform to the main floor.

Strefas then turned around and began to walk back to the bar. Plaintiff then confronted Strefas, beginning to tell him off and poking him in the chest. To restrain Plaintiff, Strefas threw her against a post in the Velvet Dog, causing her to lose consciousness. Plaintiff awoke outside the Velvet Dog, face down over a concrete stand. Plaintiff struggled against whomever was behind her applying force to her head and buttocks area, and thought she was going to be raped. Plaintiff responded by "fight[ing] like a wild cat" as she shouted, twisted, punched, and kicked. During this time Plaintiff admits she was never harmed or touched in any way by Defendants Woyma or Kraynik.

Plaintiff was put in a squad car and transported to Cleveland's First District jail. The officer driving contacted Plaintiff's parents upon hearing from her that she had been sexually assaulted. Plaintiff was booked into the First District, and charged with assaulting an officer and resisting arrest.

Plaintiff slept that night on a bed covered with stains and soiled with food. Plaintiff alleges she was denied a clean mattress, a blanket, a toothbrush, toilet paper, and a useable toilet, which was covered with blood and diarrhea. Plaintiff also alleges her head hurt and she requested medical attention, but received none from Officers Jane Does 1-2, who were employed by the City of Cleveland Police Department. A prisoner in the adjacent cell complained that she (the prisoner) had tuberculosis and was spitting up blood. Plaintiff alleges that Defendant did not isolate the complaining prisoner to protect her health.

Injuries Plaintiff allegedly suffered include: permanent loss of hearing in her left ear, a third-degree concussion, positive tests for tuberculosis, Post-Traumatic Stress Disorder, Acute Psychosis, trichotillomania (hair pulling), and anxiety, with psychological damage so severe that she alleges she cannot return to work and is permanently disabled. Plaintiff alleges medical expenses in excess of one hundred thousand dollars, with additional expenses in the future.

Michelle Greenlee signed a Release-Dismissal Agreement on June 26, 2002, potentially waiving her right to file a civil rights action against Officers Strefas, Tate, Kraynik, and Woyma in return for the prosecutor dismissing pending criminal charges of assaulting an officer and resisting arrest.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is genuine when it can only be resolved "by a finder of fact because it may be reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." Id. An opponent of a motion for summary judgment may not rely on the mere allegations of the complaint, but must set forth specific facts showing a genuine issue for trial. Id. No genuine issue exists for trial when no reasonable jury could return a verdict for the nonmoving party. Id. In evaluating a motion for summary judgment the court must evaluate all reasonable inferences from facts in the record in a light most favorable to the nonmoving party and must construe the evidence in favor of the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The moving party has the initial burden of proving the absence of any genuine issue of material fact and his entitlement to judgment as a matter of law on the basis of the undisputed record. Celotex, 477 U.S. at 322.

If the movant does meet this burden, then the burden shifts to the nonmoving party to show that there is a genuine issue of material fact appropriately decided at trial. Id. The nonmoving party must "set forth specific facts" through affidavits or other materials showing that there is a genuine issue of material fact appropriately decided at trial. Liberty Lobby, Inc., 477 U.S. at 248; citing Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252. The party

6

may not rest on mere allegations in the pleadings to show a material issue of fact. Bickley v. Norfolk & Western Ry., 60 F. Supp.2d 732, 735 (ND Ohio 1998), aff'd 187 F.3d 634 (6th Cir. 1999).

### III. LAW AND ANALYSIS

**1. RELEASE-DISMISSAL AGREEMENT**

On June 26, 2002, Plaintiff signed a Release-Dismissal Agreement ("Agreement") in which Plaintiff released Cleveland Police Officers Manuel Strefas, Martin Tate, John Kraynik, and Frank Woyma from all past and future liability arising out of the events of December 1, 2001. In exchange, she entered the Cuyahoga County Diversion Program.

Defendants contend all of Plaintiff's claims against the municipal defendants are barred as a matter of law because she signed the Agreement. The Agreement, however, named only Strefas, Tate, Kraynik, and Woyma. Therefore, only these parties are eligible for summary judgment on the basis of the Agreement since Plaintiff would have waived her right to bring suit.

Plaintiff contests the validity of the Agreement, stating that she did not enter the Agreement voluntarily. Under Town Newton v. Rumery, 480 U.S. 386 (1987), a Release-Dismissal Agreement is not enforceable if it is not voluntary. Rumery requires that a Release-Dismissal Agreement must meet three prongs in order to be enforceable: (1) it must be voluntary; (2) there must be no evidence of prosecutorial misconduct; and (3) enforcement of the agreement would not adversely affect the relevant public interests. Id. at 398.

**A. Voluntariness**

The Court in Rumery put forth four factors for consideration in determining the enforceability of a Release-Dismissal Agreement: (1) the sophistication of a criminal defendant; (2) whether the

7

defendant was in custody when the agreement was made; (3) whether the defendant was represented by counsel who drafted the agreement; and (4) whether the defendant had ample time to consider the agreement before signing it.

### 1) Sophistication of the Defendant

Plaintiff is an educated, adult woman.  However, Plaintiff contends that as a result of the incident, she suffers from acute psychosis and severe Post Traumatic Stress Disorder (PTSD).  As a result of her psychosis and PTSD, Plaintiff asserts she feared going back into custody because, due to the traumatic events, jail was the precise source of her psychosis.

To support Plaintiff's claim that PTSD and psychosis bar her from having been able to complete a valid Agreement, she offers affidavits from her family physician, Dr. Harriet Lemberger-Schor, and her social worker, Betsy A. Dechant.  Both Dr. Lemberger-Schor and Ms. Dechant treated Plaintiff from December of 2001 through at least June 26, 2002, the date Plaintiff signed the Agreement.

They opine that Plaintiff was not competent to make a decision as to the Release-Dismissal Agreement since PTSD and Acute Psychosis gave her an extreme and unreasonable fear of jail.  As a result, Plaintiff argues the Agreement is invalid and the Court should deny summary judgment to Officers Strefas, Tate, Kraynik, and Woyma.

Defendants reply that neither Dr. Lemberger-Schor nor Ms. Dechant were ever identified as experts by the deadline of November 15, 2004,  never submitted expert reports, and yet,  Dr. Lemberger-Schor and Ms. Dechant, testified about Plaintiff's incapacity to sign the Agreement.

8

Neither Dr. Lemberger-Schor nor Ms. Dechant are experts in this case, and neither may provide expert opinions pursuant to Rule 702 of the Federal Rules of Evidence. Their testimony regarding Plaintiff's lack of mental competence may not be considered in evaluating the summary judgment motions presented by Defendants. A link between Plaintiff's disorders and her inability to sign the Agreement is fundamental to prove the Agreement is invalid. Yet, the only existing evidence showing a link between Plaintiff's PTSD/Acute Psychosis and her lack of competence in signing the Agreement are the affidavits of Dr. Lemberger-Schor and Ms. Dechant, which are stricken for non-compliance with the Court's expert orders.

### 2) Custody of Plaintiff

Under the second factor of the *Rumery* test, the Court must consider whether Plaintiff was in custody when the Agreement was made. The evidence indicates that she was not in custody on the date she signed an admission of guilt–which she wrote herself–on May 1, 2002, nor was she in custody on June 26, 2002, the date she signed the Agreement.

### 3) Represented by Counsel

The third factor of the *Rumery* test is whether the defendant was represented by counsel who drafted the Agreement. The evidence indicates that the Agreement was drafted by the prosecutor. However, her counsel was present at the signing of both the admission of guilt and the Agreement.

### 4) Time to Consider the Agreement

The fourth factor is whether Plaintiff had ample time to consider the Agreement before signing it. Plaintiff contends there is no record of whether she did indeed have ample time. However,

9

Defendants note Plaintiff signed an admission of guilt on May 1, 2002, and she had until June 26, 2002 to consider the Agreement.

Therefore, only factor three minimally weigh against voluntariness, and factors one, two, and four all go toward a showing of voluntariness when Plaintiff signed the Agreement. On balance, therefore, the Rumery test is satisfied, and there is no issue of genuine fact that Plaintiff signed the Agreement voluntarily.

### B. Prosecutorial Misconduct

Plaintiff has produced no evidence of prosecutorial misconduct, therefore favoring voluntariness on this factor.

### C. Enforcement of the Agreement Would Not Violate Public Interests

Plaintiff cites Kinney v. City of Cleveland, 144 F.Supp.2d 908 (N.D. Ohio 2001), which applies the Cain v. Darby Borough, 7 F.3d 377 (3d Cir. 1993) standard in determining whether or not a Release-Dismissal Agreement violates public policy. Plaintiff presents two main arguments:

#### a. Prosecutor's Interest in a Release-Dismissal for a Civil Rights Claim Must Exist Due to a Belief that the Claim is "Marginal" or "Frivolous"

Plaintiff first notes there must exist a proper motive by the prosecutor to seek a Release-Dismissal Agreement, and here "there is no suggestion as to why the prosecutor sought the release-dismissal." Plaintiff stresses, according to Kinney, the burden is on the defendant to show the § 1983 claims are "marginal" or "frivolous": "We believe that under Rumery there must be a case-specific showing that the released civil rights claims appeared to be marginal or frivolous at the time the agreement was made and that the prosecutor was in fact motivated by this reason." Kinney, 144 F.Supp.2d at 918, citing Cain, 7 F.3d at 383.

10

In the Sixth Circuit, the standard requiring a prosecutor to provide a justification in order to make the Release-Dismissal Agreement valid "does not appear to create a particularly difficult hurdle for the prosecutor to clear." Coughlin v. Coots, 5 F.3d 970, 975 (6th Cir. 1993). Historically, the public interest/policy prong of the Rumery voluntariness test is the "least-well defined element." Id. A Release-Dismissal Agreement is usually held enforceable even with a fairly stock justification, e.g. a prosecutor's heavy case load, in most circumstances. Id.

Nonetheless, the Rumery public interest element provides a "legitimate criminal justice tool" in scenarios where police misconduct is alleged, but the prosecutor is unable to find the truth surrounding the allegation. Id. As the justification offered in Lynch v. Alhambra, 880 F.2d 1122, 1128 (9th Cir. 1989), provides, "[Release-dismissal] agreements...achieve a rough substantial justice where the 'true' facts of the case are not known. For example, if the prosecutor is confronted with conflicting stories of police misconduct, and is genuinely unsure as to whom to believe, the execution of a release-dismissal agreement allows everyone to declare the case a draw and go home, thereby avoiding the risk and expense of going to trial."

On the basis of Coughlin and Lynch, therefore, there is a valid reason to uphold the Agreement, namely, the disputes over the allegations of police misconduct. Under Coughlin and Lynch, the disputes as to what Officers Strefas, Kraynik, Woyma, and Tate did that night are unresolved, and the prosecutor likely sought the Agreement to conserve resources and simply declare a draw. The Defendants named in the Agreement are able to avoid the threat of civil liability, and Plaintiff is able to avoid the threat of a criminal trial and conviction.

### b. The Serious Nature of the Claims and Plaintiff's Injuries Demonstrate that Plaintiff's Claims Are Per Se Not "Marginal" or "Frivolous"

11

In addition to Plaintiff's argument that the prosecutor gave "no suggestion as to why [he or she] sought the release-dismissal," Plaintiff argues the serious nature of her claims and injuries are enough to show her claims are not "marginal" or "frivolous." The Cain decision requires that the Court look at the public interest prong in a case-by-case, fact-specific fashion. Cain, 7 F.3d at 381, citing Rumery, 480 U.S. at 392.

Allowing a plaintiff to assert substantial injuries in order to overturn a Release-Dismissal Agreement, without more, would render Cain's case by case analysis requirement meaningless. Plaintiffs with serious injuries have signed Release Dismissal Agreements in the past because the facts point to them as the proximate cause of the injuries.

Enforcing Release Dismissal Agreements upholds the public interest prong by enabling parties to resolve disputes amicably themselves, weed out unmeritorious claims and charges, and conserve precious judicial resources.

Therefore, because there are no genuine issues of material fact on the issues of voluntariness, prosecutorial misconduct, and public interests, the court grants summary judgment to Officers Manuel Strefas, John Kraynik, and Frank Woyma on all counts. In addition, although Martin Tate was named in Count Two (excessive force) he was not named as a party. This issue is moot since the Agreement includes Tate, and he is also dismissed.

## 2. FAILURE TO STATE A CLAIM AGAINST CITY OF CLEVELAND

Plaintiff names as parties City of Cleveland and Chief Edward Lohn in her complaint. However, per Federal Rule of Civil Procedure 12(b)(6), Plaintiff fails to name Defendants in any of the six counts, and none of the counts use the all-inclusive, "all defendants" or some other indicator that

demarcates a specific claim against either City of Cleveland and Chief Edward Lohn. Plaintiff proffers arguments against both Defendants in her response to Defendants' motion for summary judgment, but arguments made in a response are insufficient to constitute reasonable notice to either the City of Cleveland or Chief Lohn in the absence of stating a claim in the complaint, even given the most liberal of interpretations of the Federal Rules of Civil Procedure.

Therefore, the Court dismisses Defendants City of Cleveland and Chief Lohn from this action pursuant to Rule 12(b)(6) for Plaintiff's failure to state a claim.

### 3. NAMING OF NON SUI JURIS ENTITIES - CLEVELAND POLICE DEPARTMENT & CITY OF CLEVELAND POLICE - FIRST DISTRICT

As Defendants properly noted in their summary judgment motion, police departments are not *sui juris* entities - that is, they are not capable of being sued as a matter of law. Edmunds v. Dillin, 485 F.Supp. 722, 724 (N.D. Ohio 1980); Burgess v. Doe, 116 Ohio App.3d 61, 64 (Ohio Ct. App. 1996); Fields v. Dailey, 68 Ohio App.3d 33, 35 (Ohio Ct. App. 1990). Plaintiff made no response to this argument in her reply nor offered any evidence in response to Defendants' motion. Therefore, the Court grants the motion for summary judgment by Defendants Cleveland Police Department and City of Cleveland Police - First District.

### 4. IDENTIFYING JANE DOE DEFENDANTS 1-2

As this Complaint was filed On November 21, 2003, and the Jane Doe officers have not been identified the Court Orders Plaintiff to provide in writing and support with affidavit within 30 days of the filing of this Order good cause why the Jane Doe officers should not be dismissed.

### 5. WEST SIXTH STREET PARTNERS, INC. AND THE VELVET DOG'S MOTION FOR SUMMARY JUDGMENT

13

Count Six of Plaintiff's complaint alleges negligence against Defendants West Sixth Street Partners, Inc. and the Velvet Dog. Plaintiff alleges that Defendants owed and violated a duty of care to the patron to be free from the physical and mental harm while at the Velvet Dog. Plaintiff also alleges that West Sixth Street Partners and Velvet Dog employed Defendants Strefas and Woyma under a theory of respondeat superior, "permitt[ing] them to physically assault a patron of their establishment without provocation and maliciously."

### A. RESPONDEAT SUPERIOR

Plaintiff's first theory in her negligence claim against Defendants West Sixth Street Partners and Velvet Dog is respondeat superior. Plaintiff alleges Strefas had an employment relationship with the Velvet Dog, and that "[b]ut for [Officer Strefas'] employment relationship with the Defendant Velvet Dog he would not have approached [Plaintiff]." Even though the record is unclear as to whether Strefas was actually working that night, a bartender allegedly requested that Strefas check on the Plaintiff. Plaintiff argues Strefas was, at least, in an agency relationship with the Velvet Dog.

Respondeat superior requires, for liability, three elements: 1) a principal-agent relationship, 2) the agent committed the tortious conduct in the scope of his agency, and 3) the behavior giving rise to the tort was necessarily "'calculated to facilitate or promote the business for which the [employee] was employed.'" Kuhn v. Youlten, 692 N.E.2d 226, 231 (Ohio Ct. App. 1997), citing Baird v. Sickler, 433 N.E.2d 593 (Ohio 1982); Osborne v. Lyles, 587 N.E.2d 825, 829 (Ohio 1992), quoting Byrd v. Farber, 565 N.E.2d 584, 587 (Ohio 1991). The Court addresses the elements respectively below.

First, Plaintiff contends the bartender's request to Strefas to check on Plaintiff created a principal-agent relationship between Strefas and the Velvet Dog/West Sixth Street Partners. Defendant

14

responds that even if the principal-agent relationship was established by the request, that relationship terminated before anything actionable had occurred. Defendant claims once Strefas observed Plaintiff's friend remove her from the elevated dance floor, the agency relationship was "accomplished and terminated in advance of the events causing Plaintiff's alleged injuries." Objectively, such a claim is a somewhat rigid interpretation of the agency relationship, however, it creates a genuine issue of material fact when considering the issue in a light most favorable to the non-movant.

Second, Plaintiff argues Defendant Strefas' treatment of Plaintiff was committed while in the scope of Strefas' agency, and there is "a genuine issue of fact in that Strefas was acting within the scope of his employment or in the alternative was acting as an agent." Defendants assert that Strefas' alleged grabbing of Plaintiff by the crotch–an issue itself which is factually disputed between Strefas and Plaintiff, also constitutes grounds for denying summary judgment–is per se misconduct which "clearly exceeds the scope of the agency relationship." Plaintiff cites the Tennessee Supreme Court to the effect that even if the West Sixth Street Partners and/or the Velvet Dog expressly forbade Strefas' conduct, respondeat superior still applies if the conduct was done in the general authority of regulating club patrons. Anderson v. Covert, 245 S.W.2d 770 (Tenn. 1952). Whether or not it was done in the general authority of regulating club patrons is again a genuine issue of material fact for the jury.

The final element of respondeat superior, that Strefas at the time of his conduct was advancing the business for which he was employed, has been addressed above and considered a genuine issue for the fact finder. In particular, whether or not Strefas' agency relationship was terminated once Plaintiff got down from the platform and whether or not Strefas' alleged misconduct was done in the general authority are reasonably debatable questions sufficient to deny summary judgment.

Therefore, the Court denies summary judgment to West Sixth Street Partners and the Velvet Dog on the claim of respondeat superior.

### B.  DUTY OF CARE TO PATRONS/PLAINTIFF

Negligence requires a breach of a duty of care by Defendants owed toward Plaintiff.  Mitchell v. Cleveland Elec. Illum. Co., 30 Ohio St.3d 92, 94 (Ohio 1987). Defendants assert that West Sixth Street Partners breached no duty of care to Plaintiff for the actions of Defendant Strefas.  They acknowledge Plaintiff was a patron of a night club operated by West Sixth Street Partners, and Defendants owed her a duty of ordinary care.  Priestly v. Norwood, 36 Ohio St.2d 29, 31 (Ohio 1976); Durst v. Van Gundy, 8 Ohio App.3d 72 (Ohio Ct. App. 1982).

Citing Reitz v. May Company Department Stores, 66 Ohio App.3d 188 (Ohio Ct. App. 1990), Defendants set out a general test of foreseeability of harm–whether the events in the alleged incident could be reasonably foreseen.  The Court considers, under Reitz, the totality of the circumstances determining the foreseeability of harm, which in turn, allows a determination of whether a duty is owed to a patron, a "business invitee."  Id.  Defendants state Plaintiff must show it would be reasonably foreseeable for Defendants to assume a patron in its night club would voluntarily act to remove another individual on the premises.

The question of whether or not it is reasonably foreseeable that Strefas, a patron/agent would harm Plaintiff is a genuine issue of material fact.  Defendants attempt to paint the incident simply as a patron attacking a patron in order to defeat foreseeability.  However, the record fails to indicate the club was so unsafe as to make such an attack foreseeable.  Collins v. Down River Specialties, Inc., 128 Ohio App.3d 365 (Ohio Ct. App. 1998).

16

Therefore, the Court denies summary judgment against West Sixth Street Partners, Inc. and the Velvet Dog as to Count Six.

## IV. CONCLUSION

For the reasons stated above, the Court:

Grants the City of Cleveland summary judgment pursuant to Federal Rule of Civil Procedure 12(b)(6).

Grants Chief Edward Lohn summary judgment pursuant to Federal Rule of Civil Procedure 12(b)(6).

Grants the City of Cleveland Police summary judgment as to Count Five.

Grants the City of Cleveland Police - First District summary judgment as to all counts alleged against it: Count One, Count Four, and Count Five.

Grants Manuel Strefas summary judgment as to all counts alleged against him: Count Two, Count Three, Count Four, and Count Five.

Grants John Kraynik summary judgment as to all counts alleged against him: Count Two, Count Four, and Count Five.

Grants Frank Woyma summary judgment as to all counts alleged against him: Count Four and Count Five.

Dismisses Martin Tate from Count Two as he was never a named party in the complaint and was explicitly named in the valid Release-Dismissal Agreement.

Denies West Sixth Street Partners, Inc. summary judgment as to Count Six.

Denies Velvet Dog summary judgment as to Count Six.

Requires Plaintiff to provide in writing and supported by affidavit within thirty days of the filing of this Order good cause why Jane Does should not be dismissed.

Grants Defendants' City of Cleveland, Edward Lohn, Cleveland Police Department, City of Cleveland, Strefas, Kraynik, and Woyma's motions to strike the respective affidavits of Betsy Dechant and Harriett Lemberger-Schor.

IT IS SO ORDERED.


<u>September 15, 2005</u>  /s/ Christopher A. Boyko
**Date**  **CHRISTOPHER A. BOYKO**
  **United States District Judge**